IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN PRUETTE and CHRISTOPHER PRUETTE on behalf of INSEARCH PARTNERS, | |
| Petitioners, | CIVIL ACTION NO. 19-487 |
| v. | |
| EGAN JONES RATINGS COMPANY, | |
| Respondent. | |

## <u>MEMORANDUM OPINION</u>

**Schmehl, J.   /s/ JLS**                                        **April 16, 2020**

Before the Court is the Petition to Confirm in Part and Vacate in Part Final
Arbitration Award of Steven Pruette and Christopher Pruette on behalf of InSearch
Partners ("Pruette"). Respondent Egan Jones Ratings Company ("EJR") has filed a Cross
Motion to Confirm the Arbitration Award. Having read the parties' briefing and after oral
argument held on this matter, I will deny grant Pruette's petition in part and deny it in
part. I will also grant EJR's cross petition to confirm the award.

## I.     <u>BACKGROUND</u>

Pruette filed this proceeding under the Federal Arbitration Act , 9 U.S.C. § 1 *et.*
*seq.* ("FAA") to confirm in part and vacate in part an arbitration award made in a
proceeding held by the American Arbitration Association. The award in question
addresses a contractual dispute between EJR, a Nationally Recognized Securities Rating
Organization ("NRSRO") certified by the Securities and Exchange Commission, and
Pruette, its exclusive distributor of ratings services.

EJR and Pruette entered into an exclusive distribution agreement on December
20, 1998 ("1998 Agreement"), providing that Pruette, through InSearch Partners, would

solicit and accept orders for the securities rating service provided by EJR. (*See* ECF No. 1, Ex. 1) The 1998 Agreement provided for a two-year term, and for three separate one-year extensions if certain sales goals were met. *Id.* The Agreement further stated that "[e]ither party may end its association with the other with 90-day written notice after the end of the two year period…" *Id.* Meanwhile, at some point, EJR engaged another distributor, Peter Arnold, to market and sell services covered by the exclusivity provision of the 1998 Agreement.

Pursuant to a stipulation of the parties, the arbitration was bifurcated into liability and damages phases. Accordingly, the arbitrator's first decision was on liability only and did not address damages, and a separate arbitration hearing was later held on damages. After the initial award as to liability only was entered by the arbitrator, finding EJR liable for breach of the 1998 agreement, EJR filed a petition to this Court to vacate the liability award. This Court denied EJR's petition to vacate, and on appeal, the Third Circuit affirmed this Court's decision. The matter then proceeded as to damages only in front of the same arbitrator. Said arbitrator entered a Final Award on January 8, 2019.

After the entry of the final award as to damages, Pruette petitioned this Court to confirm the arbitrator's award in part and vacate the award in part. EJR initially joined in the petition to vacate the award, but subsequently withdrew its joinder and now seeks confirmation of the entire award. EJR opposes Pruette's petition to the extent it seeks to vacate the award. For the reasons that follow, I will grant Pruette's petition to the extent it seeks to confirm the damages award and deny Pruette's petition to the extent it seeks to vacate the damages award. I will also grant EJR's cross-petition to confirm the entire

award, as I find that the arbitrator met all standards required for confirmation of an arbitration award.

II.   **STANDARD OF REVIEW**

An "extremely deferential standard of judicial review [is] set forth in the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 10(a)(1)-10(a)(4)," and a "district court may vacate [an award] only under exceedingly narrow circumstances." *Dluhos v. Strasberg,* 321 F.3d 365, 366 (3d Cir.2003), (*citing* 9 U.S.C. § 10); *Amalgamated Meat Cutters & Butcher Workmen of N. Am., Local 195 v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir.1975). Pursuant to 9 U.S.C.A. § 10, a judge may vacate an arbitration award 1) where the award was procured by corruption, fraud, or undue means; 2) where there was evident partiality or corruption in the arbitrators... ; 3) where the arbitrators were guilty of misconduct and the rights of any party were thereby prejudiced; or 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the matter before them was not made. 9 U.S.C. § 10(a)(2)-10(a)(4).

It is not proper for the court to "reexamine the evidence" when reviewing an arbitration award. *Mutual Fire, Marine, & Inland Ins. Co. v. Norad Reins. Co., Ltd.,* 868 F.2d 52, 56 (3d Cir.1989). Errors in the arbitrators' factual findings or interpretations of the law do not justify a court's review or reversal on the merits. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36-38 (1987); *Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 62 (3d Cir.1986) (citations omitted). A court may not overrule an arbitrator "simply because it disagrees" with the arbitrator's interpretation of the law. *United Transp.,* 51 F.3d at 379 (*quoting News America Publications, Inc. v. Newark*

*Typographical Union, Local 103,* 918 F .2d 21, 24 (3d Cir.1990)). Even where the court is convinced that the arbitrator has committed serious error, the award must be enforced unless there is "absolutely no support at all in the record justifying the arbitrator's determinations." *Id.*

Further, it is well-settled that "remand is to be used sparingly. Arbitrators are not as amenable to remand of a case for retrial in the same manner as are trial judges. Because an arbitration award must be upheld even when there have been 'errors ... in the determination of factual issues,' a remand that allows the arbitrators to reexamine their decision on the merits is not permissible." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 334 (3d Cir. 1991) (citations omitted). Applying these rigorous standards, invitations to remand matters to arbitrators, while frequently made, are only granted by the courts in limited and unusual circumstances. *Compare Oberwager v. McKechnie, Ltd.,* 2007 WL 4322982 (D.Del. Dec. 10, 2007)(denying remand request); *Local 825 IUOE v. Tuckahoe Sand & Gravel,* 2007 WL 1797657 (D.N.J. June 220, 2007) (same); *Mantaline Corp. v. PPG Industries, Inc.* 2006 WL 297263 W.D.Pa.,2006) (same) *with, O & PIU, Local 471 v. Brownsville General Hospital,* 186 F.3d 326 (3d. Cir.1999) (award ambiguous when third party refusal to comply with counseling provisions of arbitrator's decision made award unenforceable); *Teamsters Local 312 v. Matlack, Inc.,* 118 F3d. 985 (3d Cir.1997) (remand appropriate where arbitrator sends parties a letter limiting the scope of a prior award); *District 1199C v. Genesis Healthcare,* 2008 WL 5116899 (D.N.J. Dec. 2, 2008) (remand appropriate when back-pay order contained unresolved ambiguity).

**III.   DISCUSSION**

Pruette moves to confirm the portion of the final award which awarded it damages in the amount of $1,385,552.74, plus $51,791.82 for arbitration costs, fees and expenses. However, Pruette seeks to vacate the portion of the final award that did not award it the full amount sought on two categories of damages and did not award it any recovery at all on four other categories of claimed damages. EJR seeks to have the award confirmed in its entirety.

Pruette argues that the arbitrator made two errors; first, Pruette argues that the arbitrator "determined that he was barred under principles of *functio officio* from correcting an error made in his 2016 Partial Final Award," and second, that the arbitrator "disregarded the law of the case, as established in the initial District Court review of the Partial Final Award." ECF No. 1, p. 2. For the reasons set forth below, I find that none of the issues presented by Pruette justify vacating the portion of the arbitration award as requested, and therefore I will confirm the entire award.

**A.  Did Arbitrator Believe that he was Precluded from Awarding Post-2014 Damages?**

Pruette argues that the arbitrator "determined that he was barred under the principles of *functus officio* from correcting an error made in his 2016 Partial Final Award." ECF No. 1, p. 2. Specifically, Pruette claims that the arbitrator erroneously "record[ed] a false recollection of the existence of a notice of termination in 2014," and that the "uncontradicted evidence was that the singular event occurring in 2014 was an attempt to pass off a fraudulently back-dated document as a genuine 2006 notice of termination of a different agreement." *Id*., p. 3. Pruette claims that due to the arbitrator's

"erroneous determination that he was precluded," the arbitrator refused to award any actual damages for lost commissions owed for their post-2014 economic activities. *Id.*

In the Partial Final Award that was entered as to liability only, the arbitrator stated that "EJR did not provide the required ninety days written notice of termination, and thereby end the Agreement, until 2014." ECF No. 1, Ex 5(a), p. 2.[1] The Arbitrator then footnoted this statement regarding the notice of termination by stating: "There is no credible evidence Claimants ever received the putative notice of termination, dated May 10, 2006." ECF No. 1, Ex. 5(a). According to Pruette, "the statement in the text, and that in the footnote, cannot be reconciled, since the notice of termination which the Arbitrator determined that the Pruettes did not receive at any time is the same document which he identified as support for a 2014 termination date." ECF No. 1, p. 4. Pruette argues that the issue of whether or not there was a notice of termination of the 1998 Agreement in 2014 was "first raised gratuitously by the Arbitrator, in conflict with the other findings in his Partial Final Award." *Id.* at p. 5. Pruette also claims that this determination was "*dictum*, since the determination of the termination date of the 1998 Agreement was relevant only to the quantification of the damages, not to the issues of enforceability and breach, as addressed in his interim Award." *Id.,* pp. 5-6.

---

[1] The Arbitrator went on to cite to testimony of Steven Pruette at page 108 of the first day of the hearing record in support of this statement. A review of page 108 of the hearing record shows the following exchange between counsel for EJR and Mr. Pruette:

> Q. I believe your testimony was that you never received a notice that a contract had been terminated or would be terminated; is that accurate?
> A. No. I did receive a notice in 2014, but prior to being sent that in 2014, if I have that date correct, I had not received any notice.

ECF No. 1, Ex. 5(b).

At the damages arbitration in this matter, Pruette pointed out this alleged error to the arbitrator multiple times. First, after a series of discovery motions, the arbitrator refused to grant an adverse inference in favor of Pruette that the 1998 Agreement had remained in effect past 2014, because his "March 21, 2016 Partial Final Award of Arbitrator found otherwise." ECF No. 1, Ex. 6. The Arbitrator then allowed Pruette to have reargument on its claim that the 1998 Agreement had not been terminated in 2014. ECF No. 1, Ex. 7. According to the memorandum of law filed by Pruette on this issue, it argued that no termination document had been identified which was dated or effective in 2014. *Id.* It also argued that the Arbitrator's basis for his order refusing their requested adverse inference was ambiguous and was *dictum*, as it only went to the cutoff point for damages, an issue that was not before the Arbitrator at the time he authored the Partial Final Award. *Id.* Despite this reargument and extensive briefing, the Arbitrator denied Pruette's motion for reconsideration as to the termination date of the 1998 Agreement without an opinion. ECF No. 1, Ex. 8.

With this factual backdrop, Pruette then leaps to make the following assertion: "The only possible explanation for this illogical ruling is a belief by the Arbitrator that he was powerless to correct his mistake, presumably under the doctrine of *functus officio*," and that "[t]he subsequently-issued Final Award necessarily reflects this perceived inability to award damages inconsistent with the previous erroneous conclusion." Pruette argues that this "belief" by the Arbitrator caused him to award zero dollars for all categories of damages sought by Pruette involving rights to income because of post-2014 economic activities of EJR.

After extensive review of the record in this matter, I find that there is no evidence to support Pruette's argument as to this issue. First, it is important to point out that the parties in this matter did not require, and therefore, the Arbitrator did not prepare, a reasoned opinion as to damages. His opinion gave no explanation for the amounts that he chose to award or not award as damages; it merely listed the amounts of damages awarded. Any contention by Pruette that the reason for the Arbitrator's damages award was due to his feeling constrained by the *functus officio* doctrine is pure speculation, as no opinion exists to explain the damages award in any detail and the Arbitrator never mentioned *functus officio* at any time. This Court cannot vacate a valid award of an Arbitrator based upon mere speculation by a party who is not happy with the outcome. Further, the Arbitrator in this matter was clearly aware of Pruette's argument that the 1998 Agreement was never terminated, as he heard argument on a motion for reconsideration on this issue, and still awarded the amounts that he did. There is no need to perform a detailed analysis of *functus officio* in this matter, as any argument that the Arbitrator relied upon this doctrine is simply conjecture. Neither this Court nor either of the parties can form an opinion as to how or why the Arbitrator calculated the damages in this case.

In summary, no one, including this Court, can definitively state why or how the Arbitrator calculated damages in this case. Any attempt to do so would be pure speculation, and as District Court review of arbitration decisions is quite narrow, this Court will not rely on conjecture to vacate or remand an otherwise valid decision of an arbitrator. Accordingly, Pruette's petition to vacate on this ground is denied.

**B. Did the Arbitrator Violate the Law of the Case?**

Next, Pruette argues that the Arbitrator improperly applied the statute of limitations to "truncate by more than half the damages recoverable because of direct sales to customers, and because of the retention of another distributor, Peter Arnold." ECF No. 1, p. 3. Pruette argues that in the opinion on the Partial Final Award, this Court considered EJR's contention that the Arbitrator's failure to have reached the statute of limitations was an error warranting vacatur, and stated that "the arbitrator's failing to reach the statute of limitations defense in his partial final award is not a manifest disregard of the law." Pruette argues that "the discussion of the limitations issue in the Memorandum Opinion makes it clear that both this Court and the parties viewed the issue of the application of the statute of limitations to be a part of the question of liability" and that my ruling "established the law of the case, namely that the statute of limitations would not be applied." ECF No. 1, p. 8.

First, Pruette's argument misconstrues this Court's prior opinion, as I did not hold that the statute of limitations was inapplicable in this matter. Rather, I found that the Arbitrator did not commit a manifest disregard of the law in declining to address the statute of limitations in his Partial Final Award. This Court examined caselaw from other districts and found that many districts have held that the statute of limitations does not apply in arbitrations, but as of the date of the opinion, the Third Circuit had yet to rule on this issue. That is quite different from a Court opining that the statute of limitations would not be applied to a specific set of facts.

Further, this argument suffers from the same defect as Pruette's previous argument and no analysis of the law of the case doctrine is necessary. Simply put,

Pruette's claim as to why the Arbitrator limited his damage award as he did is pure speculation. As the parties did not require a reasoned opinion from the Arbitrator, we have no way of determining why the Arbitrator arrived at the damages figures in question. Without knowing exactly how or why the Arbitrator made the damages award that he did and taking into account this Court's very limited review of an arbitration decision, I cannot vacate the Arbitrator's damages award.

IV.  **<u>CONCLUSION</u>**

Therefore, for the reasons set forth more fully above, I find that the Final Award of the arbitration in this matter should be confirmed in its entirety and entered as a judgment of this Court.